Seymour Boyers, J.
Petitioner has brought five separate summary proceedings against respondents, as his tenants, for nonpayment of rent. These proceedings were consolidated for the purpose of trial, and the case was submitted to me upon an agreed statement of facts.
It appears that petitioner on October 15, 1968 leased the premises from one Anthony S. Tascarella, owner of the subject premises, who is not a party to these proceedings. The petitioner sublet portions of the premises to the respective respondents herein. Under clause 24 of the lease from the owner the petitioner covenanted to install a “hot water system ” in the premises at his own cost and expense. Clause 6 of the lease, dealing with defaults on the part of the tenant in respect to covenants and conditions, provided in part as follows: ‘ ‘ Landlord may give to the Tenant five days’ notice of intention to end the term of this lease, and thereupon, at the expiration of said five days, the term of this lease shall expire as fully and completely as if that day were the date herein definitely fixed for the expiration of the term, and the tenant will then quit and surrender the demised premises to the Landlord, but the tenant shall remain liable as hereinafter provided. ’ ’
On December 29, 1968 the owner, Tascarella, sent a letter to petitioner stating that he elected to terminate the lease for alleged failure to comply with provisions of the lease, specifying paragraph 24 alluded to above. This letter also claimed the petitioner was in default in respect to clause 22 of the lease. *927 However, neither the agreed statement of facts nor the respondents’ answers deal with any alleged breach of that clause by petitioner. Thus the court will not consider such clause as being in issue herein.
Another letter was sent by the owner to his tenant on January 9, 1969 which made reference to the previous letter terminating the lease, and requested the petitioner to remove from the premises. Subsequently, each of the subtenants, on being informed of these facts, made some payments of rent to the owner. The answers of all of the respondents herein allege a breach of the prime lease by the petitioner in failing to install the afore-mentioned hot water system. While the said answers and the agreed statement of facts leave much to be desired, the defense in substance appears to be that the prime lease was validly terminated by the owner and in consequence thereof the subtenants are not obligated to pay rent to the petitioner. No legal proceedings have been brought by the owner against the petitioner to obtain possession of the premises.
The thrust of respondents’ defense is the proposition that when the underlying lease is terminated, either by ending its natural term or by exercise of a cancellation clause contained therein providing for earlier termination, any subleases are similarly terminated. (See Jaynet Drug Corp. v. Sheraton-Astor Corp., 158 N. Y. S. 2d 344; Bove v. Coppola, 45 Misc. 636; Eten v. Luytser, 60 N. Y. 252; Hessberg v. Mazullo, 182 N. Y. S. 636; Ashton Holding Co., v. Levitt, 191 App. Div. 91.) The difficulty with these precedents in support of the sublessees’ contention is that in those cases there was some affirmative act other than the service of a notice by the fee owner, or prime landlord, in bringing a summary proceeding against the prime tenant and/or the subtenants or there was an effective surrender of the premises by the prime tenant. It would appear that clause 6 of the lease was a conditional limitation and that the owner lessor, in sending the notice afore-mentioned, effectively terminated the lease. It is at this juncture that the sublessees are placed in dilemma as to their status in regard to their tenancy. Upon being apprised of the facts they aro in a sense being required to make a determination, indeed it seems a legal one, that the estate of their landlord was terminated or canceled. However, there can be no doubt that their leasehold interests were being threatened, as the prime landlord under those circumstances was in a position to bring summary proceedings against the sublessor and themselves as sublessees. In this connection the case of Peck v. Ingersoll (7 N. Y. 528, 529), while dealing with the nonpayment of rent *928 by the sublessor, is apposite in dealing with the rights of a sublessee in that circumstance. ‘ ‘ It has been frequently decided, upon the most obvious principles of justice, that if an under-tenant be compelled to pay rent to the head-landlord he may deduct it from the rent due to his immediate lessor; or, if the sum paid exceeds that due to the lessee, the tenant may, in an action of assumpsit for money paid to the use of the lessor, recover the excess * * * This privilege upon the part of the under-tenant exists, if there be in the head-landjojd a legal right, by the exercise of which the person who pays may be damnified, unless he satisfies it. * * * It is not necessary that the head-landlord should distrain, or even demand the money, or commence or threaten a suit. The right to enforce his claim in this way will make payment by the under-tenant compulsory, within the principle of the decisions.” Under the circumstances herein can it be said there was no right in the sublessees to attorn to the prime landlord upon breach of a condition of the prime lease and notice of termination sent as afore-mentioned? I believe that the tenants did have such a right.
In any event, there is an added factor herein not alluded to by either party. The owner did more than serve a notice of termination under his lease with the petitioner, as he further sought and received rents from the subtenants who, in effect, attorned to him as landlord. Under clause 7 of the prime lease the owner had the right of re-entry after notice of termination was served upon his tenant because of a default thereunder. In the case of Mulliken v. Brown (201 App. Div. 860) it was held that a landlord, by making a new agreement with the subtenant and having the subtenant attorn to him, ousted the plaintiff, the sublessor, from possession as effectually as he could have been ousted by execution of a warrant. (See also MacGlashan v. Marvin, 185 App. Div. 157.) It thus appears, under the lease clause dealing with re-entry, that the landlord has effectively done just that in having the sublessees attorn to him and pay rent to him. In the circumstances, as between petitioner and his lessor, the burden of bringing any legal proceeding would appear to have fallen on the petitioner sublessor whose possession has been disrupted, even if he has not been literally ousted therefrom. A subtenant sought to be dispossessed on summary proceedings may show that his lessor’s lease has expired by a lawful re-entry by the owner (Cohen v. Carpenter, 128 App. Div. 862).
Accordingly, these five summary proceedings for nonpayment are dismissed.